**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **I.C. DEPOSITS DEVELOPMENT, INC., Plaintiff,** | § | |
| | § | **Civil Action** |
| **v.** | § | **No. 5:26-cv-03178-FB** |
| | § | |
| **EDWARD F. VALDESPINO, Defendant.** | § | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO STAY PROCEEDINGS AND COMPEL ARBITRATION AND, IN THE ALTERNATIVE, REQUEST TO ENFORCE EXISTING TEMPORARY INJUNCTION**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiff I.C. Deposits Development, Inc. ("Plaintiff") files this Response in Opposition to Defendant Edward F. Valdespino's ("Defendant" or "Valdespino") Motion to Stay Proceedings and Compel Arbitration (the "Motion") (ECF No. 3), and respectfully shows the Court as follows:

## I. INTRODUCTION AND SUMMARY OF RESPONSE

1. Defendant's Motion rests on a false premise: that there is an undisputed "valid arbitration agreement" the Court must enforce. There is not. Plaintiff's Original Petition, filed in state court and now before this Court, expressly alleges that the document Defendant relies upon—the "Combined Escrow Agreement and Deed of Agreement" (the "Agreement")—was never a valid contract at all. It was a fabricated instrument used as the vehicle for fraud by which Valdespino, posing as a "neutral" Texas attorney and IOLTA escrow agent, induced Plaintiff to transfer $5,000,000.00 to Defendant's purported IOLTA account.

2. Defendant's Motion misapplies *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006), and *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395 (1967), by conflating two distinct categories of challenge. *Buckeye* expressly carved out from its

rule, a category of challenges that go to *whether any agreement to arbitrate was ever concluded*—and made clear that such formation challenges are for the court, not the arbitrator. *See Buckeye*, 546 U.S. at 444 n.1. The Fifth Circuit has expressly so held. *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 218–19 (5th Cir. 2003) ("[W]here the very existence of any agreement [to arbitrate] is disputed, it is for the courts to decide at the outset whether an agreement was reached, applying state-law principles of contract.").

3. Defendant's Motion fails for four independent reasons. And even if none of them succeeded, Plaintiff would still be entitled to the existing Temporary Injunction and to continued injunctive relief in aid of any arbitration.

4. **First**, Plaintiff challenges the very *existence* of any agreement. Plaintiff has pled that the entire instrument was a fraudulent fabrication—a sham document used as bait in a wire-fraud scheme—and that no valid contract was ever formed. That challenge is reserved to this Court.

5. **Second**, Plaintiff has specifically and independently challenged the arbitration provision itself, separate and apart from the Agreement as a whole. See Pet. (ECF No. 1-2, pg. 3-10) ¶¶ 19–21. Under *Prima Paint*, *Buckeye*, and *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010), such a specific challenge to the arbitration clause itself is for the court.

6. **Third**, Plaintiff specifically challenges the purported delegation clause for the same fraud-based reasons. Under *Rent-A-Center*, a specific challenge to the delegation provision is reserved to the court, not the arbitrator. 561 U.S. at 71–72.

7. **Fourth**, Defendant cannot selectively enforce the arbitration provision after repudiating his core obligations under the same Agreement. Valdespino has admitted possessing Plaintiff's $5,000,000.00 (ECF No. 1-2, pg. 16, pg. 28-30, pg. 37-38) refuses to return it, and

refuses to explain any reason for doing so. A material breach excuses the non-breaching party from further performance. *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004). A party "cannot both have his contract and defeat it too." *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 135 (Tex. 2005).

8. **Notably**, even if the Court were to conclude that the parties' disputes must ultimately be arbitrated, the existing state-court (Agreed) Temporary Injunction remains in force under 28 U.S.C. § 1450 and this Court retains the authority—and Plaintiff respectfully submits, the obligation—to enforce injunctive relief in aid of arbitration to preserve the missing $5,000,000.00 pending resolution. *See Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011); *RGI, Inc. v. Tucker & Assocs., Inc.*, 858 F.2d 227, 230 (5th Cir. 1988).

9. Any one of these grounds independently requires denial of the Motion. At a minimum, the existing Temporary Injunction must be enforced pursuant to 28 U.S.C. § 1450.

## II. FACTUAL AND PROCEDURAL BACKGROUND

10. **A. *The Scheme.*** In September 2025, Plaintiff was presented with a document styled "Combined Escrow Agreement and Deed of Agreement," (ECF No. 1-2, pg. 40-47; ECF No. 3-1) which represented that Valdespino—a licensed Texas attorney—would serve as a neutral escrow agent and hold $5,000,000.00 of Plaintiff's funds in his IOLTA trust account pending completion of a purported investment transaction. Pet. ¶¶ 7–10. The Agreement represented that Plaintiff would receive approximately $50,000,000.00 within twenty days, and that Plaintiff's $5,000,000.00 would otherwise be returned within seventy-two (72) hours if the purported transaction did not close. *See* Pet. ¶¶ 10, 23(e).

11. To create the appearance of legitimacy, Defendant supplied a purported attorney office address, a purported IOLTA account, a Texas driver's license, legal credentials, and a signed

escrow agreement. Pet. ¶ 11. As Plaintiff alleged, Valdespino was not in fact a neutral escrow agent at all—he was a participant in a fraudulent scheme designed to induce Plaintiff to wire the funds into Valdespino's control. Pet. ¶¶ 12–14.

12. **B. *Defendant's Refusal to Return or Account for the Funds.*** After the purported transaction failed (as it was always destined to do), Plaintiff demanded return of its $5,000,000.00. Valdespino admitted in writing on March 22, 2026, that he possessed the funds and committed to returning them on or before March 26, 2026. Pet. Ex. B. Valdespino then refused to comply. *Id.*

13. **C. *The State Court Proceedings.*** Plaintiff filed suit in District Court of Bexar County, Texas on April 9, 2026. The state court (Judge Tina Torres) entered an ex parte Temporary Restraining Order on April 10, 2026, enjoining Valdespino from transferring, dissipating, or withdrawing Plaintiff's $5,000,000.00. Extensive litigation followed consisting of Valdespino's execution of a Rule 11 Agreement admitting he held $5,000,000.00 of Plaintiff's funds in his IOLTA account (ECF No. 1-2, pg. 28-30), Valdespino's answer to the suit, Valdespino's request and award of a continuance, and Valdespino's appearance and participation at three temporary-injunction settings. On May 11, 2026, the state court (Judge Larry Noll) entered an agreed Temporary Injunction requiring Valdespino to deposit the $5,000,000.00 into the registry of the Bexar County District Clerk by 11:00 a.m. on May 14, 2026.

14. **D. *Removal on the Eve of Compliance.*** Valdespino filed his Notice of Removal on May 14, 2026—the day the funds were due in the court registry—and filed the instant Motion to Compel Arbitration the following day. Plaintiff's contemporaneously-filed Motion to Remand and Motion to Enforce Existing Temporary Injunction (ECF No. 5) is incorporated by reference herein.

15. **E. *Plaintiff's Specific Challenges to Arbitration.*** Plaintiff's Original Petition does not merely attack the Agreement "as a whole." It expressly and *specifically* challenges the arbitration provision itself:

> 19. The arbitration clause is unenforceable because the clause itself was procured through fraud. [Valdespino] represented he was a legitimate, neutral attorney and escrow agent in order to obtain Plaintiff's agreement to arbitration.
>
> 20. Plaintiff specifically challenges the arbitration provision itself because [Valdespino] used his purported status as a Texas attorney and neutral escrow agent to cause Plaintiff to agree that disputes would be resolved through arbitration rather than in court.
>
> 21. Had Plaintiff known [Valdespino] was participating in the scheme, Plaintiff never would have agreed to arbitration.

16. Pet. ¶¶ 19–21 (emphasis added). Plaintiff also pled that "no valid contract was formed," that the Agreement is "void ab initio," and that Valdespino "cannot invoke the arbitration provision because he was not a neutral stakeholder, but instead a co-conspirator." Pet. ¶ 18(a)–(f). These are precisely the kinds of formation and clause-specific challenges that *Buckeye* and *Rent-A-Center* reserve for the Court.

## III. LEGAL STANDARD

17. Federal policy favors arbitration when the parties have actually agreed to arbitrate. That policy does *not* apply to the threshold question whether the parties agreed to arbitrate in the first place. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 301–02 (2010); *Will-Drill*, 352 F.3d at 214. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986).

18. The Supreme Court and the Fifth Circuit recognize three distinct categories of challenge:

(1) Challenges to the validity of the contract "as a whole" (other than to the arbitration clause specifically). These go to the arbitrator. *Buckeye*, 546 U.S. at 445–46; *Prima Paint*, 388 U.S. at 403–04.

(2) Challenges directed *specifically* at the arbitration clause itself (e.g., fraud in the inducement of the arbitration clause, unconscionability of the arbitration clause). These are for the court. *Prima Paint*, 388 U.S. at 403–04; *Rent-A-Ctr.*, 561 U.S. at 70–71.

(3) Challenges to whether any agreement to arbitrate was ever formed at all—these are categorically for the court. *Buckeye*, 546 U.S. at 444 n.1; *Will-Drill*, 352 F.3d at 218–19; *In re Morgan Stanley & Co.*, 293 S.W.3d 182, 187 (Tex. 2009).

22. Where, as here, the agreement also purports to contain a delegation clause assigning arbitrability questions to the arbitrator, the same framework applies: a specific challenge to the delegation provision—as distinct from a challenge to the larger arbitration agreement—is decided by the court. *Rent-A-Ctr.*, 561 U.S. at 71–72. "[U]nless [the resisting party] challenged the delegation provision specifically, we must treat it as valid . . . leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Id.* at 72. Conversely, where the resisting party *does* challenge the delegation provision specifically—as Plaintiff does here—the court must resolve that challenge.

## IV. ARGUMENT AND AUTHORITIES

### A. The Court—Not the Arbitrator—Decides Whether Any Agreement to Arbitrate Was Ever Formed, and Plaintiff Has Squarely Placed That Question in Issue.

23. Defendant's Motion proceeds as if *Buckeye* stands for the proposition that *any* attack on a contract containing an arbitration clause must go to the arbitrator. It does not. The *Buckeye* majority took pains to identify what its holding did *not* reach:

> The issue of the contract's validity is different from the issue [of] whether any agreement between the alleged obligor and obligee was ever concluded. Our opinion today addresses only the former, and does not speak to the issue decided in [cases] which hold that it is for courts to decide whether the alleged obligor ever signed the contract, whether the signor lacked authority to commit the alleged principal, [or] whether the signor lacked the mental capacity to assent.

24. *Buckeye*, 546 U.S. at 444 n.1 (citations omitted). The Fifth Circuit has expressly applied this distinction: "[W]here the very existence of any agreement is disputed, it is for the courts to decide at the outset whether an agreement was reached, applying state-law principles of contract." *Will-Drill*, 352 F.3d at 218–19. "To hold otherwise would be to say that the arbitrators derive their jurisdiction from a contract that may not exist." *Id.* at 219. The Texas Supreme Court is in accord. *In re Morgan Stanley*, 293 S.W.3d at 187 ("*Prima Paint* does not encompass contract-formation challenges.").

25. Plaintiff's pleadings squarely raise contract-formation challenges. The Original Petition alleges that "no valid agreement was ever formed," that the Agreement is "void ab initio," and that Defendant fraudulently held himself out as a neutral Texas attorney and IOLTA escrow agent in order to obtain Plaintiff's signature on what is, in substance, not a contract at all but a tool of fraud. Pet. ¶¶ 11–16, 18. As pled, the document Defendant calls an "Agreement" was never a genuine offer to enter into a bilateral escrow arrangement; it was a script to extract $5,000,000.00. Under Texas law, a contract is not formed where there is no mutual assent to the same essential terms, and an instrument procured by an actor masquerading as a fundamentally different counterparty cannot give rise to a binding contract. *See Domingo v. Mitchell*, 257 S.W.3d 34, 39–40 (Tex. App.—Amarillo 2008, pet. denied) (mutual assent required); *Will-Drill*, 352 F.3d at 218–19.

26. Because the threshold question is whether *any* agreement between Plaintiff and Defendant was ever "concluded," the Court—not the AAA—must decide that question first. Defendant cannot bootstrap a non-existent contract into an enforceable arbitration mandate.

**B. Plaintiff Has Specifically Challenged the Arbitration Provision Itself, Which Removes the Question from the Arbitrator Under *Prima Paint* and *Buckeye*.**

27. Even if the Court were to assume *arguendo* that a contract was formed, Plaintiff has independently and specifically challenged the arbitration provision itself. The *Buckeye* Court was explicit: "[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." 546 U.S. at 445–46 (emphasis added). The corollary—that a challenge directed at the arbitration clause itself is for the court—is well established. *Prima Paint*, 388 U.S. at 403–04; *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 472 (5th Cir. 2002).

28. Plaintiff's Petition expressly singles out the arbitration provision:

> Plaintiff specifically challenges the arbitration provision itself because Defendant used his purported status as a Texas attorney and neutral escrow agent to cause Plaintiff to agree that disputes would be resolved through arbitration rather than in court.

Pet. ¶ 20 (emphasis added); *see also* Pet. ¶¶ 19, 21. The specific theory is straightforward: Defendant's false posture as a Texas-licensed neutral was the very means by which he obtained Plaintiff's agreement to a private AAA arbitration—precisely because lay parties trust licensed Texas attorneys and the supposed safeguards of IOLTA escrow. Had Plaintiff known Valdespino was a wrongdoer rather than a neutral, Plaintiff would never have agreed to remove disputes from a public courtroom into a confidential private forum that conveniently shielded Valdespino's misconduct from public scrutiny. Pet. ¶ 21.

30. That allegation is a clause-specific challenge. The fraud went to the arbitration provision in particular, not merely to the broader transaction. Federal courts have consistently held such clause-specific allegations are for the court. *See, e.g.*, *Corchado v. Foulke Mgmt. Corp.*, 720 F. App'x 595, 598 (3d Cir. 2017) (denying motion to compel where plaintiffs specifically alleged fraudulent inducement of the arbitration clause); *Spahr v. Secco*, 330 F.3d 1266, 1273 (10th Cir. 2003) (specific challenges to the arbitration clause are for the court).

**C. Plaintiff Also Specifically Challenges the Purported Delegation Clause, Which the Court Must Decide Under Rent-A-Center.**

31. Defendant urges the Court to send the entire dispute—including arbitrability itself—to the AAA on the theory that incorporation of the AAA rules constitutes "clear and unmistakable" evidence of a delegation clause. Mot. at 2–3 (citing *Total Energies E&P USA, Inc. v. MP Gulf of Mexico, LLC*, 667 S.W.3d 694 (Tex. 2023); *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671 (5th Cir. 2012)). But even where a delegation clause exists, the court must resolve a specific challenge directed at the delegation provision.

32. In *Rent-A-Center*, the Supreme Court held that "unless [the party resisting arbitration] challenged the delegation provision specifically, we must treat it as valid . . . leaving any challenge to the validity of the Agreement as a whole for the arbitrator." 561 U.S. at 72. The flip side, however, is equally clear: where the resisting party *does* specifically challenge the delegation provision, the court must decide that challenge. *Id.* at 71–72; *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 202–03 (5th Cir. 2016).

33. Moreover, *Rent-A-Center's* delegation framework presupposes that a contract—and thus a delegation provision—actually exists. As discussed above, Plaintiff disputes the very existence of any agreement. "[A] party cannot be required to submit any dispute to arbitration" unless the court is satisfied an agreement to arbitrate exists, *Granite Rock*, 561 U.S. at 299, and a

delegation provision is itself an arbitration agreement subject to the same requirement, *Rent-A-Ctr.*, 561 U.S. at 68–69. A delegation clause embedded in a non-existent or fraud-fabricated contract cannot transfer to an arbitrator the gateway question whether that contract exists. *See Will-Drill*, 352 F.3d at 219.

34. Plaintiff's challenges to the arbitration clause apply with equal force to the delegation clause: Valdespino procured Plaintiff's assent to *every* provision of the purported Agreement—substantive, arbitral, and delegation alike—through the same fraudulent representations of neutrality and attorney status. Plaintiff hereby specifically challenges the delegation provision on the same grounds set forth in Paragraphs 19–21 of the Original Petition. The Court must decide that challenge.

**D. Defendant Cannot Selectively Enforce the Arbitration Provision After Repudiating His Core Obligations Under the Same Agreement.**

35. Setting aside the threshold formation and clause-specific challenges discussed above, Defendant's Motion fails on a basic principle of contract law and arbitration jurisprudence alike: a party who repudiates his core obligations under a contract cannot then turn around and cherry-pick the one provision of that same contract that he believes favors him. Defendant seeks to disavow the substantive heart of the Agreement—his duty to return Plaintiff's $5,000,000.00—while simultaneously demanding the benefit of the Agreement's arbitration clause. He cannot have it both ways.

36. The Texas Supreme Court has long recognized that "[i]t is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance." *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004) (per curiam); *see also Bartush-Schnitzius Foods Co. v. Cimco Refrigeration, Inc.*, 518 S.W.3d 432, 436 (Tex. 2017) (per curiam) (same). A

material breach is one that "deprives the injured party of the benefit that it reasonably could have anticipated from the breaching party's full performance." *Hernandez v. Gulf Grp. Lloyds*, 875 S.W.2d 691, 693 (Tex. 1994).

37. Valdespino's breach here is not just material—it is total. The entire point of the purported agreement with Valdespino, from Plaintiff's perspective, was that Valdespino would hold $5,000,000.00 in escrow ***and return it*** if the underlying transaction did not close. Valdespino has represented in writing to the Court that he possesses the funds. He has represented in writing to the Court that he agrees to return them. He has nevertheless refused—repeatedly, deliberately, and now in violation of a state-court Temporary Injunction—to return them. That conduct deprives Plaintiff of "the benefit [it] reasonably could have anticipated" from the Agreement in its entirety. *Hernandez*, 875 S.W.2d at 693.

38. The principle that a breaching party cannot selectively enforce favorable provisions is not just generic contract law—it has been specifically applied in the arbitration context. A party "cannot both have his contract and defeat it too." *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 135 (Tex. 2005) (orig. proceeding) (quotation marks omitted); *see also In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005) (orig. proceeding). Under the doctrine of direct-benefits estoppel and its corollaries, a party who claims the benefits of a contract is bound by its burdens, and conversely a party who repudiates the burdens of a contract cannot demand its benefits. *Weekley Homes*, 180 S.W.3d at 132–35. Defendant's refusal to honor his core escrow obligations is a repudiation of the contract; he cannot now resurrect a single, favorable provision to defeat Plaintiff's rights.

39. This is particularly true where, as here, the breach goes to the very identity and role that gave rise to the arbitration clause in the first place. Valdespino procured Plaintiff's assent to

arbitration by holding himself out as a neutral Texas attorney and fiduciary escrow agent. Pet. ¶¶ 11, 19–21. By converting Plaintiff's funds and refusing to return them, Valdespino has not merely breached the Agreement—he has repudiated the very role on which the arbitration provision was predicated. The arbitration clause cannot survive that repudiation; it falls with the rest of Valdespino's performance.

40. Nor can Valdespino escape this conclusion by invoking arbitration-clause survivability cases. While Texas law recognizes that arbitration clauses may survive ordinary termination or rescission of the underlying contract, *see, e.g.*, *Henry v. Gonzalez*, 18 S.W.3d 684, 690 (Tex. App.—San Antonio 2000, pet. dism'd), those cases address survival of an arbitration clause where *both parties* abide by the rest of the contract's framework. None permits a *repudiating* party to compel arbitration after walking away from substantive obligations.

41. Plaintiff respectfully submits that this Court need not reach this argument if it grants remand or finds the formation, clause-specific, or delegation challenges dispositive. But should the Court reach the question, Defendant's own conduct independently bars him from enforcing the arbitration provision.

**E. Defendant's Cited Authorities Do Not Compel a Different Result.**

42. Defendant relies principally on *In re Kaplan Higher Education Corp.*, 235 S.W.3d 206 (Tex. 2007), *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749 (Tex. 2001), and the *Buckeye* holding itself. Each of those cases involved a challenge to a *validly formed* contract, where the dispute was whether the contract should be voidable for reasons that affected the contract as a whole. *Kaplan* involved an enrollment agreement at an existing college. *FirstMerit* involved a mobile-home purchase agreement. *Buckeye* involved deferred-payment loan agreements. None involved a counterparty masquerading as a Texas attorney to extract funds. None involved an allegation

that the contract was a wholesale fabrication. None involved a clause-specific allegation that the arbitration provision itself was procured by misrepresentations about the agent's identity and neutrality.

43. Defendant also cites *Henry v. Gonzalez*, 18 S.W.3d 684, 690 (Tex. App.—San Antonio 2000, pet. dism'd), for the proposition that an arbitration clause "survives the termination or repudiation of the contract as a whole." Mot. at 4–5. But *Henry* addresses survival post-formation; it has nothing to say about a contract that was never formed in the first place, or a clause that was specifically procured by fraud.

44. Even the dissent's sentence from *Prima Paint* that Defendant quotes (Mot. at 5)—"a party . . . [must] carry out his 'arbitration agreement' even though a court might . . . hold the entire contract . . . void because of fraud in the inducement"—assumes there *is* an arbitration agreement to be carried out. Plaintiff's position is that there is not.

**F. At a Minimum, the Court Should Conduct a Trial on the Existence of the Arbitration Agreement Under 9 U.S.C. § 4.**

45. Section 4 of the Federal Arbitration Act provides that "[i]f the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. Where the resisting party places the making of the arbitration agreement "in issue" by raising a genuine dispute of material fact, the FAA mandates a trial. *Chester v. DirecTV, L.L.C.*, 607 F. App'x 362, 363–64 (5th Cir. 2015); *Will-Drill*, 352 F.3d at 219. Plaintiff has placed both the existence of any contract, and the validity of the specific arbitration and delegation provisions, in issue. Should the Court conclude these matters cannot be resolved on the papers, the proper course is a Section 4 trial—not referral to AAA arbitration.

**G. The Existing Temporary Injunction Remains in Force and This Court Retains Authority to Enforce Injunctive Relief in Aid of Arbitration.**

46. Defendant's Motion proceeds as though an order compelling arbitration would, by itself, dissolve the state-court Temporary Injunction and strip this Court of any authority. The law is to the contrary on both counts. Even if the Court were to compel arbitration—which it should not—Plaintiff is entitled to the existing injunction, and to additional injunctive relief, if necessary, to preserve the status quo and prevent the dispute from being rendered moot before any arbitrator could rule.

47. First, under 28 U.S.C. § 1450, "[a]ll injunctions, orders, and other proceedings had in [the state-court action] prior to its removal shall remain in full force and effect until dissolved or modified by the district court." Section 1450 is mandatory; the state-court Temporary Injunction entered by Judge Noll on May 11, 2026—requiring Valdespino to deposit $5,000,000.00 into the registry of the Bexar County District Clerk by 11:00 a.m. on May 14, 2026—remains "in full force and effect" in this Court today, regardless of any subsequent order compelling arbitration. *See Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 436–37 (1974); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1303–04 (5th Cir. 1988). An order compelling arbitration does not "dissolve or modify" an existing injunction within the meaning of Section 1450; if Valdespino wishes the existing injunction lifted, he must independently move to dissolve it and carry his burden of showing changed circumstances.

48. Second, even if the case were to proceed to arbitration, this Court retains authority to enter and enforce preliminary injunctive relief in aid of arbitration. *See Janvey v. Alguire*, 647 F.3d 585 (5th Cir. 2011). In *Janvey*, the receiver of a Stanford-related Ponzi scheme sought a preliminary injunction freezing the accounts of former Stanford employees who had moved to compel arbitration. The Fifth Circuit held: "we agree with the district court that [it] can grant preliminary relief before deciding whether to compel arbitration. The language of the FAA does

not touch on the ancillary power of the federal court to act before it decides whether the dispute is arbitrable." *Id.* at 595. The court reasoned that requiring district courts to "stop everything" and rule on arbitration before ruling on injunctive relief would create a "harsh procedural rule" that would frustrate arbitration agreements by depriving such agreements of "meaningful[ness]." *Id.* at 593–95 (quoting *Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43, 51 (1st Cir. 1986)).

49. Both *Janvey* and this case involve a fraud scheme in which the defendant obtained funds through misrepresentation and then sought to invoke arbitration to shield the proceeds from a court order requiring their preservation. Both involve specifically identifiable, traceable funds (here, Plaintiff's $5,000,000.00, which Valdespino represents is in his IOLTA account). Both involve a concrete risk of dissipation. The *Janvey* Court affirmed the asset-freeze injunction even though arbitrability was contested. This is precisely the relief Plaintiff seeks here.

50. Third, the Fifth Circuit and majority of circuits recognize that a district court has authority to grant injunctive relief to preserve the status quo pending arbitration, particularly where the arbitration would be rendered "meaningless" absent such relief. *See RGI, Inc. v. Tucker & Assocs., Inc.*, 858 F.2d 227, 230 (5th Cir. 1988) ("[T]he congressional desire to enforce arbitration agreements would frequently be frustrated if the courts were precluded from issuing preliminary injunctive relief to preserve the status quo pending arbitration and, ipso facto, the meaningfulness of the arbitration process."); *Teradyne*, 797 F.2d at 51 (1st Cir.); *Roso-Lino Beverage Distribs., Inc. v. Coca-Cola Bottling Co.*, 749 F.2d 124, 125 (2d Cir. 1984) (per curiam); *Ortho Pharm. Corp. v. Amgen, Inc.*, 882 F.2d 806, 811–12 (3d Cir. 1989); *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1377–80 (6th Cir. 1995); *Sauer-Getriebe KG v. White Hydraulics, Inc.*, 715 F.2d 348, 351–52 (7th Cir. 1983). District courts within the Fifth Circuit

consistently follow this majority rule. *See, e.g.*, *Amegy Bank N.A. v. Monarch Flight II, LLC*, 870 F. Supp. 2d 441, 451–52 (S.D. Tex. 2012).

51. Fourth, the equities and traditional preliminary-injunction factors—which the state court has already found in Plaintiff's favor after a full evidentiary hearing—overwhelmingly support continued injunctive relief: (i) Plaintiff has a substantial likelihood of success on the merits, because Valdespino does not dispute the existence of the $5,000,000.00 and obligation to return it; (ii) Plaintiff faces imminent and irreparable harm if the funds are dissipated, transferred, or concealed before resolution of this matter; (iii) the balance of equities tips decisively in Plaintiff's favor because the injunction merely requires Valdespino to do what he has already agreed to do; and (iv) the public interest favors protecting the integrity of attorney trust accounts and preventing dissipation of fiduciary funds. *See Janvey*, 647 F.3d at 595–96 (applying traditional four-factor test); *Nken v. Holder*, 556 U.S. 418, 434 (2009).

52. The danger of dissipation here is neither hypothetical nor speculative. Defendant admitted possession of the funds in a sworn Rule 11 Agreement filed in state court, promised in writing to return them, then refused; he resisted three temporary-injunction settings before suffering an adverse ruling; and he removed this case on the eve of the compliance deadline. That sequence demonstrates exactly the kind of "concrete and immediate danger that the disputed escrow funds may be transferred, dissipated, concealed, or otherwise rendered unavailable" that warrants continued injunctive relief. *See Janvey v. Alguire*, 647 F.3d at 600 (preservation of "specifically identifiable" and "traceable" funds subject to equitable claims is permissible even after *Grupo Mexicano*).

53. In summary, arbitration would not strip Plaintiff of the injunctive relief already entered, would not divest this Court of authority to grant further relief, and would not justify

allowing Valdespino to dissipate the undisputed $5,000,000.00 while the parties litigate threshold arbitrability questions. At a bare minimum, this Court should enforce the existing Temporary Injunction pursuant to 28 U.S.C. § 1450 and order Valdespino to appear and show cause as to why he should not be held contempt for refusing to comply with the May 11, 2026, agreed Temporary Injunction.

**H. Defendant's Motion Should Be Held in Abeyance Pending Resolution of Plaintiff's Motion to Remand.**

54. As set forth in Plaintiff's Motion to Remand and to Enforce Existing Temporary Injunction (ECF No. 5), removal in this case was improper under the forum-defendant rule, 28 U.S.C. § 1441(b)(2), and Valdespino waived removal by extensive participation in the state court proceeding, including filing an answer, executing a Rule 11 agreement, appearing for three temporary-injunction settings, and submitting to entry of an adverse Temporary Injunction Order. Defendant's Motion to Compel Arbitration should be denied or, at minimum, held in abeyance pending resolution of remand, which logically precedes any arbitrability question. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (jurisdictional questions resolved first).

## V. CONCLUSION AND PRAYER

55. For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order: (a) **denying** Defendant's Motion to Stay Proceedings and Compel Arbitration in its entirety; (b) remanding this action to the District Court of Bexar County, Texas for the reasons set forth in Plaintiff's Motion to Remand (ECF No. 5); (c) confirming that the state-court Temporary Injunction entered on May 11, 2026 remains in full force and effect pursuant to 28 U.S.C. § 1450, and issuing an order for Valdespino to appear and show good cause for non-compliance; (d) in the alternative, conducting a Section 4 trial on the making of any arbitration agreement before

referring any matter to arbitration; (e) in the further alternative, even if any matter is referred to arbitration, entering and enforcing injunctive relief in aid of arbitration; and (f) granting Plaintiff such other and further relief, at law or in equity, to which it may be justly entitled.

Respectfully submitted,

CUBETA LAW GROUP, PLLC

By: */s/ Kelli Cubeta*
Kelli P. Cubeta
Texas State Bar No. 24040746
Email: Kelli.Cubeta@cubetalaw.com
322 Martinez Street
San Antonio, Texas 78205
Telephone: (210) 934-4500

AND

DROUGHT, DROUGHT & BOBBITT, L.L.P.

By: */s/ Matthew J. Badders*
Matthew J. Badders
State Bar No. 24069325
mjb@ddb-law.com
Laura H. Gonzalez
State Bar No. 24127264
lhg@ddb-law.com
2632 Broadway St., Suite 401-S
San Antonio, Texas 78215
(210) 225-4031 Telephone
(210) 222-0586 Telecopier

ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I hereby certify that on May 21, 2026, a true and correct copy of the foregoing was served on all counsel of record via the Court's CM/ECF system, including the following:

Jason M. Davis
Caroline Newman Small
DAVIS & SANTOS, PLLC
719 S. Flores Street
San Antonio, Texas 78204
jdavis@dslawpc.com
csmall@dslawpc.com
Attorneys for Defendant, Edward F. Valdespino

*/s/ Matthew J. Badders*
Matthew J. Badders