**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **I.C. DEPOSITS DEVELOPMENT, INC.,** | § | |
| **Plaintiff,** | § | |
| | § | **Civil Action** |
| **v.** | § | **No. 5:26-cv-03178-FB** |
| | § | |
| | § | |
| **EDWARD F. VALDESPINO,** | § | |
| **Defendant.** | § | |

**PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE AND TO HOLD**
**DEFENDANT EDWARD F. VALDESPINO IN CIVIL CONTEMPT**
**(SUBJECT TO MOTION TO REMAND)**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiff I.C. Deposits Development, Inc. ("Plaintiff") files this Motion for Order to Show

Cause and to Hold Defendant Edward F. Valdespino ("Defendant" or "Valdespino") in Civil

Contempt, subject to Plaintiff's Motion to Remand (ECF No. 5), and respectfully shows the Court

as follows:

## I.  INTRODUCTION AND SUMMARY

1.       Valdespino—a licensed Texas attorney—is in flagrant, ongoing, and willful

violation of a court order requiring him to deposit $5,000,000.00 of Plaintiff's funds into the

registry of the court.  The funds at issue are not theoretical or speculative; Valdespino himself has

admitted under oath that they sit, right now, in his IOLTA trust account.  The order he is violating

was entered after a contested temporary-injunction hearing at which Valdespino appeared,

presented argument, and agreed on the record to the form of the order.  He has not appealed it.  He

has not moved to dissolve it.  He has not asked for additional time.  He has simply refused to

comply.

2.      Plaintiff respectfully requests that the Court (a) issue an Order to Show Cause directing Valdespino to appear and show cause why he should not be held in civil contempt; (b) following the show-cause hearing, hold Valdespino in civil contempt; and (c) impose coercive sanctions, including incarceration of Valdespino until he purges the contempt by depositing the $5,000,000.00 into the registry of this Court.

3.      Valdespino carries the keys to the jailhouse door in his own pocket. He has admitted under oath that he has the present ability to comply, and the moment he tenders the $5,000,000.00 to the registry of the Court, the coercive incarceration may end.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

4.      **A. *The Underlying Dispute.*** Valdespino, who has been a licensed Texas attorney for over twenty years, represented to Plaintiff in September 2025 that he would hold $5,000,000.00 of Plaintiff's funds in his IOLTA trust account pending completion of a purported investment transaction with non-party Finnexo Investments, Ltd., and that Plaintiff's funds would be returned in the event the transaction did not close. Plaintiff wired the $5,000,000.00 to Valdespino's purported IOLTA account in reliance on those representations. The transaction did not close. Valdespino has, ever since, refused to return Plaintiff's $5,000,000.00.

5.      **B. *The State Court Proceedings.*** On April 9, 2026, Plaintiff filed suit in the District Court of Bexar County, Texas. On April 10, 2026, Judge Tina Torres entered an ex parte Temporary Restraining Order enjoining Valdespino from transferring or dissipating Plaintiff's funds.

6.      **C. *Valdespino's Sworn Rule 11 Admission.*** On April 24, 2026, Valdespino—appearing pro se as a licensed Texas attorney—executed and filed a Rule 11 Agreement in which he expressly and unambiguously admitted, under his signature:

> There is in excess of $5,000,000.00 in my IOLTA trust account, $5,000,000.00 of which was sent to me by Plaintiff I.C. Deposits Development, Inc.

7.     That sworn admission, filed on the public record of the state court, is unequivocal and dispositive on the question of Valdespino's present ability to comply with any order requiring delivery of the funds.

8.     **D. *The Temporary Injunction Order.*** After Valdespino's second "Not Ready" motion was denied, the parties appeared before the Honorable Larry Noll for the temporary-injunction hearing on May 11, 2026. Counsel for Plaintiff and Valdespino presented arguments and evidence. Following the hearing, Judge Noll entered an agreed Temporary Injunction Order requiring Valdespino to deposit Plaintiff's $5,000,000.00 into the registry of the Bexar County District Clerk by no later than 11:00 a.m. on May 14, 2026 (the "TI Order"). The TI Order included express findings that Plaintiff would suffer imminent and irreparable injury absent injunctive relief; that Valdespino possessed Plaintiff's $5,000,000.00; that the funds were the crux of the dispute; that Plaintiff would probably recover in the action; and that the injunction was necessary to preserve the status quo.

9.     Significantly, the May 14, 2026, deadline was proposed by Valdespino himself, based on his representations to the state court as to the amount of time he needed to effect the deposit. Counsel for both parties expressly agreed to the form of the TI Order, which was recited into the record by Judge Noll.

10.    **E. *Removal on the Eve of Compliance.*** Rather than comply with the TI Order he himself helped shape, Valdespino filed a Notice of Removal in this Court on May 14, 2026—the very day the funds were due in the court registry. Valdespino has now been in continuous, knowing, and willful violation of the TI Order since 11:01 a.m. on May 14, 2026.

11.     **F. *The TI Order Remains in Full Force and Effect.*** Pursuant to 28 U.S.C. § 1450, "[a]ll injunctions, orders, and other proceedings had in [the state-court action] prior to its removal shall remain in full force and effect until dissolved or modified by the district court."  Valdespino has never moved to dissolve or modify the TI Order.  The Supreme Court has confirmed that Section 1450 preserves the effectiveness of state-court injunctions post-removal precisely to prevent tactical removal from frustrating judicial orders.  *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 436 (1974); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1303–04 (5th Cir. 1988).  The TI Order is therefore enforceable in this Court "as if it had been entered by" this Court.  *Granny Goose*, 415 U.S. at 437.

### III.  THE STANDARD FOR CIVIL CONTEMPT IS SATISFIED

12.     In the Fifth Circuit, a movant establishes civil contempt by proving, by clear and convincing evidence, that: (1) a court order was in effect; (2) the order required certain conduct by the respondent; and (3) the respondent failed to comply with the court's order.  *Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir. 1992); *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995); *FDIC v. LeGrand*, 43 F.3d 163, 170 (5th Cir. 1995).  Willfulness is not required in civil contempt.  *Petroleos Mexicanos v. Crawford Enters., Inc.*, 826 F.2d 392, 401 (5th Cir. 1987).  Each element is conclusively met here.

### A.  A Court Order Was in Effect.

13.     The TI Order was entered by Judge Noll on May 11, 2026, after a contested evidentiary hearing.  Pursuant to 28 U.S.C. § 1450, the TI Order has at all times since removal remained "in full force and effect" in this Court.  Valdespino has not appealed, sought modification, or moved to dissolve.

**B.  The Order Required Specific Conduct.**

14.   The TI Order required Valdespino to deposit Plaintiff's $5,000,000.00 into the registry of the Bexar County District Clerk by no later than 11:00 a.m. on May 14, 2026.  The directive is clear, unambiguous, definite, and specific.  *See FDIC v. LeGrand*, 43 F.3d at 170 (order must be definite); *Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's Bakeries*, 177 F.3d 380, 383 (5th Cir. 1999).  Valdespino's counsel expressly agreed to the form of the order on the record, foreclosing any later claim of ambiguity.

**C.  Valdespino Has Failed—and Continues to Fail—to Comply.**

15.   The deadline passed at 11:00 a.m. on May 14, 2026.  Valdespino has not deposited the funds.  He has not deposited any portion of the funds.  He has not tendered the funds to Plaintiff.  He has offered no explanation, no application for extension, and no claim of inability.  Every minute of every day since 11:01 a.m. on May 14, 2026, has been a continuing violation of the TI Order.

**D.  Valdespino Has the Present Ability to Comply.**

16.   Valdespino's present ability to comply is not in dispute.  Valdespino has admitted under his own signature, in a Rule 11 Agreement filed on the state-court record, that the $5,000,000.00 sits in his IOLTA trust account.  Valdespino's admission of present ability is critical because it confirms that the appropriate sanction is *coercive*—not punitive—and that the contempt is purgeable.  *See Int'l Union, UMWA v. Bagwell*, 512 U.S. 821, 828–29 (1994) (civil contempt incarceration is coercive where contemnor can purge by complying); *Lamar Fin. Corp. v. Adams*, 918 F.2d 564, 567 (5th Cir. 1990).

### IV.  COERCIVE INCARCERATION IS THE APPROPRIATE REMEDY

17.     Civil contempt sanctions serve two purposes: "to coerce the defendant into compliance with the court's order, and . . . to compensate the complainant for losses sustained." *United States v. United Mine Workers*, 330 U.S. 258, 303–04 (1947); *Lamar Fin.*, 918 F.2d at 567. Where the contemnor has the present ability to comply but refuses to do so, coercive incarceration is the classic and appropriate remedy. *Bagwell*, 512 U.S. at 828 ("The paradigmatic coercive, civil contempt sanction . . . involves confining a contemnor indefinitely until he complies with an affirmative command."); *Shillitani v. United States*, 384 U.S. 364, 370–71 (1966).

**A.  Coercive Incarceration Is Permissible Because Valdespino Holds the Keys.**

18.     Coercive civil contempt incarceration is constitutionally permissible because the contemnor "carries the keys of his prison in his own pocket." *Bagwell*, 512 U.S. at 828 (quotation omitted); *Shillitani*, 384 U.S. at 368.  The contemnor may end the confinement at any moment by complying with the order.  Here, Valdespino can purge the contempt and end any incarceration the moment he tenders $5,000,000.00 to the registry of the Court.

**B.  Lesser Sanctions Would Be Inadequate.**

19.     Monetary sanctions alone would be ineffective.   Valdespino has already demonstrated that he is undeterred by the prospect of court-imposed consequences—he removed the case to evade a state-court injunction order, he has continued to refuse to return funds he admits possessing, and he has remained in willful violation for seven days as of the date of this Motion. A monetary fine alone would merely add to the running tally of his liabilities and provide no real incentive to deposit the funds he is already obligated to deposit.

20.     Daily coercive fines, while sometimes appropriate, would be inadequate here because Valdespino has demonstrated a willingness to absorb financial consequences rather than

relinquish control over Plaintiff's funds. Each day the funds remain in Valdespino's control compounds the risk of dissipation, concealment, or transfer. Only incarceration—with the immediate prospect of liberty restored upon compliance—adequately matches the urgency of the situation.

### C. Attorney's Fees Are Recoverable.

21.     Plaintiff also requests that the Court award reasonable attorney's fees and costs incurred in prosecuting this contempt. *See Cook v. Ochsner Found. Hosp.*, 559 F.2d 270, 272 (5th Cir. 1977) (fees recoverable in civil contempt); *Travelhost*, 68 F.3d at 961.

### V.  REQUEST FOR ORDER TO SHOW CAUSE

22.     Due process requires that a party alleged to be in civil contempt receive notice and an opportunity to be heard before being adjudged in contempt. *Int'l Union, UMWA v. Bagwell*, 512 U.S. at 826–27; *Cook*, 559 F.2d at 272. Plaintiff therefore requests, as a first step, that the Court enter an Order to Show Cause directing Valdespino to appear before this Court at a date and time certain to show cause, if any, why he should not be held in civil contempt for failing to comply with the TI Order, and why coercive sanctions, including incarceration until purge, should not be imposed.

23.     Given the continuing and irreparable nature of the violation, Plaintiff respectfully requests that the show-cause hearing be set on an expedited basis. Every day the funds remain in Valdespino's control increases the risk of dissipation. A proposed Order to Show Cause is submitted herewith.

## VI.  CONCLUSION AND PRAYER

24.     For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order:  (a) directing Valdespino to appear at a date and time certain to show cause why he should not be held in civil contempt for failure to comply with the May 11, 2026 Temporary Injunction Order;  (b) following the show-cause hearing, holding Valdespino in civil contempt of this Court; (c) ordering that Valdespino be taken into custody by the United States Marshal and incarcerated until such time as he purges the contempt by depositing $5,000,000.00 into the registry of this Court;  (d) awarding Plaintiff its reasonable attorney's fees and costs incurred in connection with this Motion and any contempt proceedings; and  (e) granting Plaintiff such other and further relief, at law or in equity, to which it may be justly entitled.

Respectfully submitted,

CUBETA LAW GROUP, PLLC

By: */s/ Kelli Cubeta*
Kelli P. Cubeta
Texas State Bar No. 24040746
Email: Kelli.Cubeta@cubetalaw.com
322 Martinez Street
San Antonio, Texas 78205
Telephone: (210) 934-4500

AND

DROUGHT, DROUGHT & BOBBITT, L.L.P.

By: */s/ Matthew J. Badders*
Matthew J. Badders
State Bar No. 24069325
mjb@ddb-law.com
Laura H. Gonzalez
State Bar No. 24127264
lhg@ddb-law.com
2632 Broadway St., Suite 401-S
San Antonio, Texas 78215
(210) 225-4031 Telephone
(210) 222-0586 Telecopier
**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2026, a true and correct copy of the foregoing was served

on all counsel of record via the Court's CM/ECF system, including the following:

Jason M. Davis
Caroline Newman Small
DAVIS & SANTOS, PLLC
719 S. Flores Street
San Antonio, Texas 78204
jdavis@dslawpc.com
csmall@dslawpc.com

Attorneys for Defendant, Edward F. Valdespino

*/s/ Matthew J. Badders*
Matthew J. Badders