**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **I.C. DEPOSITS DEVELOPMENT, INC.** *Plaintiff* | § § § | |
| ***v.*** | § § | **CIVIL ACTION NO. 5:26-CV-03178-FB** |
| **EDWARD F. VALDESPINO,** *Defendant* | § § § § | |

**REPLY IN SUPPORT OF MOTION TO STAY PROCEEDINGS AND COMPEL ARBITRATION**

TO THE HONORABLE COURT:

Defendant Edward F. Valdespino files this Reply in support of his Motion to Stay Proceedings and Compel Arbitration (ECF No. 3) and respectfully shows as follows:

**Introduction**

When a party moves to compel arbitration, the Court's first duty is to determine whether an arbitration agreement exists. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). Where the parties have agreed to delegate questions of arbitrability to the arbitrator, as they did here, the existence of an arbitration agreement is the *only* question for the Court to decide. *See Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012) (when parties expressly incorporate the AAA rules in their arbitration agreement, they agree that the arbitrator decides whether claims are within the scope of that agreement); *Total Energies E&P USA, Inc. v. MP Gulf of Mexico, LLC*, 667 S.W.3d 694, 708 (Tex. 2023) (same).

Plaintiff and Valdespino are parties to a Combined Escrow Agreement and Deed of Agreement (the "Agreement") that contains a broad arbitration clause. ECF No. 1-2 at 40 § 1. Plaintiff does not dispute that the Agreement exists or that Plaintiff signed it. Because the *existence* of the agreement is beyond debate, the Court must refer this case to arbitration.[1]

Plaintiff's arguments instead go to the enforceability of the arbitration agreement. For instance, Plaintiff argues the Agreement is wholly unenforceable because (according to Plaintiff) it was procured by fraud. It's well settled that "where parties have formed an agreement which contains an arbitration clause, any attempt to dissolve that agreement by having the entire agreement declared voidable or void is for the arbitrator." *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 218 (5th Cir. 2003).

## <u>Argument and Authorities</u>

### I. Legal framework for compelling arbitration

Whether to compel arbitration is a two-step inquiry. *Kubala*, 830 F.3d at 201. First, the court must determine "whether the parties entered into *any arbitration agreement at all*." *Id.* (emphasis in original). If they did, then the court ordinarily would determine whether the parties' claims fall within the arbitration agreement's scope. *Id.* But parties may agree to delegate threshold questions of arbitrability (*i.e.*, whether a claim is within the arbitration agreement's scope) to the arbitrator. *Id.* (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)).

[1] For the reasons stated in Valdespino's Response to Plaintiff's Motion to Remand and, in the Alternative, Motion to Enforce Existing Temporary Injunction (ECF No. 5), which is being filed concurrently with this reply, the Court must refer this case to arbitration *before* deciding Plaintiff's motion to remand.

If the party seeking arbitration points to a delegation clause, the court must first determine whether an agreement to arbitrate exists. *Id.* at 202. Then it must determine "whether the purported delegation clause is in fact a delegation clause—that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated." *Id.* (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)). "If there is a delegation clause, the motion to compel arbitration should be granted in almost all cases." *Id.*

**II. There is no dispute that an arbitration agreement exists.**

When performing step one of the arbitration inquiry, courts must "distinguish between 'validity' or 'enforceability' challenges and 'formation' or 'existence' challenges." *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 550 (5th Cir. 2018) (citing *Rent-A-Center*, 561 U.S. at 70 n.2 and *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006)). "[T]he category of arguments that question the very existence of an agreement include 'whether the alleged obligor ever signed the contract, whether the signor lacked authority to commit the alleged principal, and whether the signor lacked the mental capacity to assent.'" *Id.* (quoting *Buckeye*, 546 U.S. at 444 n.1); *see also Will-Drill Res.*, 352 F.3d at 218.

The existence of an arbitration agreement is not in question here. Plaintiff does not claim it never signed the Agreement, that the signor (Plaintiff's President, Israël Chekroun) lacked authority to commit the company, or that he lacked mental capacity to do so. Indeed, Plaintiff's original pleading acknowledges that it signed the Agreement. ECF No. 1-2 at 5 ¶ 14 ("Plaintiff *would not have signed the Agreement* or considered any transfer of funds absent Defendant's representations and purported role as a neutral attorney escrow agent.") (emphasis added).

The existence of the parties' arbitration agreement, therefore, is beyond doubt.

## III. Plaintiff is challenging arbitrability, not the existence of an agreement to arbitrate.

Plaintiff argues there is no *valid, enforceable* arbitration agreement. There are two types of challenges to the validity or enforceability of an arbitration agreement. *Buckeye*, 546 U.S. at 444. The first challenges the validity of the agreement to arbitrate specifically. *Id.* The second "challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.,* the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Id.*

The Fifth Circuit recognizes the "separability principle." *Will-Drill Res.*, 352 F.3d at 214–15. Under that rule, "unless a defense relates specifically to the arbitration agreement, it must be submitted to the arbitrator as part of the underlying dispute." *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 472 (5th Cir. 2002). A challenge to an arbitration clause specifically, however, goes to whether an arbitration agreement exists. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967). For instance, "if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate—the federal court may proceed to adjudicate it." *Id*.

For example, in *Southland Corp. v. Keating*, franchisees brought claims against a franchisor for fraud, breach of the franchise agreement (which contained an arbitration provision), and violations of California's Franchise and Investment Law. 465 U.S. 1, 3–4 (1984). The franchisees argued that because the franchise statute required *judicial* consideration of their claims for statutory violations, they could not be compelled to arbitrate those claims. *Id.* at 5. The U.S. Supreme Court recognized that was a challenge to the arbitration provision specifically. *See Buckeye*, 546 U.S. at 444 (citing *Southland*, 465 U.S. at 4–5).

Similarly, in *In re Poly-America, LP*, the plaintiff sued his employer for retaliatory discharge. 262 S.W.3d 337, 344 (Tex. 2008). The plaintiff challenged specific provisions of his five-page arbitration agreement that prohibited the arbitrator from awarding remedies authorized by the Texas Labor Code. *Id.* at 352. The Texas Supreme Court held those specific provisions were unenforceable, explaining that "where a particular waiver of substantive remedies or other provision of a contract is unconscionable—independent of the agreement to arbitrate—it will be unenforceable even though included in an agreement to arbitrate." *Id.* at 349. The rest of the arbitration agreement was enforceable and the dispute was otherwise subject to arbitration. *Id.* at 359–60.

Here, although Plaintiff purports to challenge the arbitration provision specifically, that's not really what it's doing. Plaintiff argues the entire Agreement (including the arbitration provision) is invalid because it was allegedly procured by fraud. *See* ECF No. 1-2 at 5 ¶ 18 ("Defendant cannot compel arbitration because Defendant *fraudulently induced* Plaintiff to enter the Agreement[.]") (emphasis added), 6 ¶¶ 22–26 (asserting a claim for "fraudulent inducement"); ECF No. 6 at 1 ¶ 1 ("[T]he Combined Escrow Agreement and Deed of Agreement . . . was never a valid contract at all."), 2 ¶ 4 ("Plaintiff has pled that the entire instrument was a fraudulent fabrication"). According to Plaintiff, the entire Agreement is void *ab initio* due to that alleged fraudulent inducement. ECF No. 1. at 5 ¶ 18.

Putting substance over form, courts consistently characterize this complaint as a challenge to the agreement as a whole—not specifically to the arbitration provision. *See, e.g.*, *Buckeye*, 546 U.S. at 444 (complaint that a contract was rendered invalid by a usurious finance charge was challenge to whole contract); *Rent-A-Center*, 561 U.S. at 71 (argument that employment contract was unconscionable due to "outrageously low wages" was challenge to

entire agreement); *In re Labatt Food Serv., LP*, 279 S.W.3d 640, 648–49 (Tex. 2009) ("[A] broad challenge to the entire contract on the ground that one of the contract's provisions is illegal and renders the whole contract invalid, but not specifically challenging the arbitration clause[,]" was a general challenge).

For instance, in *Lefoldt*, the party opposing arbitration argued the arbitration provision in its agreement was "invalid, unenforceable, revocable, voidable, or void" for failure to comply with a Mississippi statute requiring corporate actions be reflected in board minutes. *Lefoldt for Natchez Reg'l Med. Ctr. Liquidation Tr. v. Horne, LLP*, 853 F.3d 804, 817 (5th Cir. 2017). The Fifth Circuit held this was a challenge to the agreement as a whole because the party opposing arbitration did "not explain how the [statute] operates on the arbitration provision any differently than it operates on other provisions of the" agreement. *Id.* Here, too, Plaintiff does not allege or explain how it was fraudulently induced to enter the arbitration clause specifically, as opposed to the entire Agreement.

Plaintiff also argues the arbitration provision is not enforceable because Plaintiff alleges Valdespino breached and repudiated the entire Agreement—not just the arbitration provision. This, too, is a challenge to the Agreement as a whole. *See id.*

Further, even if Valdespino's compliance with other provisions of the Agreement were a condition precedent to enforcing the arbitration provision, courts have consistently viewed "[c]onditions precedent to arbitration. . . as procedural arbitrability issue[s], and . . . accordingly matters for the arbitrator to determine." *Bonded Builders Home Warranty Ass'n of Tex. v. Rockoff*, 509 S.W.3d 523, 540 (Tex. App.—El Paso 2016, no pet.) (citing *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 84–85 (2002); *John Wiley & Sons, Inc. v. Livingston*, 376

U.S. 543, 557 (1964); *In re Global Constr. Co., LLC*, 166 S.W.3d 795, 798 (Tex. App.—Houston [14th Dist.] 2005, orig. proceeding)).[2]

Again, Plaintiff does not raise forgery or lack of capacity or any other defense to the existence of an agreement. Plaintiff's defenses to arbitration are instead challenges to the enforceability of the parties' entire contract. Those defenses must be decided by the arbitrator, not this Court. *See Buckeye*, 546 U.S. at 449; *Will-Drill Res.,* 352 F.3d at 218.

**IV. The parties delegated arbitrability to the arbitrator.**

Because an arbitration agreement undisputedly exists, the next question is who decides whether Plaintiff's claims are arbitrable.

Both the Fifth Circuit and the Texas Supreme Court recognize that when parties agree to submit to the American Arbitration Association (AAA) or similar rules, they agree to delegate this question to the arbitrator. *Petrofac*, 687 F.3d at 675 (holding express incorporation of the AAA rules is clear and unmistakable evidence that the parties agreed to arbitrate arbitrability); *Total Energies*, 667 S.W.3d at 708 (holding "an agreement to arbitrate in accordance with the AAA or similar rules constitutes a clear and unmistakable agreement that the arbitrator must decide whether the parties' dispute must be resolved through arbitration").

That's what the parties did here:

[2] Plaintiff cites two cases that it implies stand for the rule that a party who has breached a contract cannot then enforce its arbitration provision. But neither case announces such a rule. Rather, those cases address compelling a non-signatory to arbitration and recognize that a non-party to a contract who "consistently and knowingly insists that others treat it as a party, . . . cannot later turn its back on the portions of the contract, such as an arbitration clause, that it finds distasteful." *See In re Weekley Homes, LP*, 180 S.W.3d 127, 135 (Tex. 2005) (cleaned up); *accord In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005).

> **1. GOVERNING LAW AND ARBITRATION**
> This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. Venue for any disputes shall be San Antonio, Texas. Disputes shall be resolved through binding arbitration under the rules of the American Arbitration Association (AAA), with arbitration costs shared equally and each party bearing its own legal fees unless otherwise specified.

ECF No. 1-2 at 40 ¶ 1 (emphasis added).

"When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019). Because the parties agreed to delegate questions of arbitrability to the arbitrator, this Court must refer the case to arbitration. *See id.; Kubala*, 830 F.3d at 203.

**V. The Court can and should vacate the state-court temporary injunction.**

Finally, as an aside, Plaintiff argues that even if the Court refers this matter to arbitration (which it must), the state-court injunction remains in place and this Court should enforce it. As explained in Valdespino's motion to vacate the state-court injunction, which is being filed concurrently with this reply, Plaintiff is wrong.

Briefly, that's because the state court's temporary injunction is improper on the merits. As Judge Rodriguez concluded in a related case involving Valdespino and a similar contract with the same language at issue here, Plaintiff does not lack an adequate remedy at law—monetary damages. *See Wyse, et al. v. Valdespino, et al.*, No. SA-26-CA-02973-XR (W.D. Tex. May 15, 2026) ("Even if Valdespino *were* to dissipate the [funds], Plaintiffs do not explain why a post-judgment, monetary remedy would be inadequate.") (emphasis in original); *see*

*also Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, [weighs] heavily against a claim of irreparable harm.").

In addition, courts in this circuit recognize that an injunction entered by a state court before removal is void if the parties agreed to resolve their disputes by binding arbitration under the AAA rules. *See RX Pros, Inc. v. CVS Health Corp.*, No. CV 16-0061, 2016 WL 316867, at *6 (W.D. La. Jan. 26, 2016) (citing *King v. La. Citizen's Fair Plan Ins. Co.*, No. 07-77675, 2008 WL 3876258, at *1 (E.D. La. Aug. 18, 2008); *Costello v. Patterson Dental Supply, Inc.*, No. 5:06-CV-213, 2007 WL 1041128, at *7 (W.D. Mich. Apr. 5, 2007)). By voluntarily submitting to those rules, which permit the arbitrator to grant preliminary (including injunctive) relief and require the arbitrator to determine arbitrability, the parties clearly and unmistakably agreed not to ask the courts to do so. When one party has done so anyway, "the proper solution is [for the federal court] to vacate the original order." *RX Pros*, 2016 WL 316867, at *3.[3]

## **Conclusion and Prayer**

For these reasons, Valdespino respectfully requests that the Court grant his motion to compel arbitration (ECF No. 3), refer Plaintiff's claims to AAA, abate these proceedings pending arbitration, and grant Valdespino all further relief to which he may be entitled at law or in equity.

---

[3] Plaintiff relies on *Janvey v. Alguire*, in which the Fifth Circuit recognized that "a court may preserve the status quo *pending its resolution of a motion to compel arbitration*, not pending the actual arbitration itself." 647 F.3d 585, 593 (5th Cir. 2011) (emphasis in original). But in that case, the parties agreed to arbitrate under the FINRA rules, which do not appear to reserve arbitrability to the arbitrator like the AAA rules invoked by the parties here. *See id.* at 591.

Dated: May 29, 2026.

Respectfully submitted,

**DAVIS & SANTOS, PLLC**

By: */s/ Caroline Newman Small*
Jason M. Davis
State Bar No. 00793592
E-mail: *jdavis@dslawpc.com*
Caroline Newman Small
State Bar No. 24056037
E-mail: *csmall@dslawpc.com*
719 S. Flores Street
San Antonio, Texas 78204
Tel.: (210) 853-5882
Fax: (210) 200-8395

***Attorneys for Defendant***
***Edward F. Valdespino***

## Certificate of Service

I certify that on May 29, 2026, a true and correct copy of the foregoing document was served upon the interested parties listed below in accordance with the Federal Rules of Civil Procedure via the Court's CM/ECF system.

| | | |
|---|---|---|
| Kelli P. Cubeta | ______ | U.S. Mail |
| E-mail: *Kelli.Cubeta@cubetalaw.com* | ______ | CMRRR |
| CUBETA LAW GROUP, PLLC | ______ | Facsimile |
| 322 Martinez St. | ______ | E-mail |
| San Antonio, Texas 78205 | X | E-file |

AND

| | | |
|---|---|---|
| Matthew J. Badders | ______ | U.S. Mail |
| Laura H. Gonzalez | ______ | CMRRR |
| E-mail: *mjb@ddb-law.com* | ______ | Facsimile |
| E-mail: *lhg@ddb-law.com* | ______ | E-mail |
| DROUGHT, DROUGHT & BOBBITT, LLP | X | E-file |
| 2632 Broadway St., Suite 401-S | | |
| San Antonio, Texas 78215 | | |

***Attorneys for Plaintiff***

*/s/ Caroline Newman Small*
Caroline Newman Small