**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **I.C. DEPOSITS DEVELOPMENT, INC., Plaintiff,** | § | |
| | § | |
| | § | **Civil Action** |
| **v.** | § | **No. 5:26-cv-03178-FB** |
| | § | |
| **EDWARD F. VALDESPINO, Defendant.** | § | |
| | § | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO VACATE STATE-COURT TEMPORARY INJUNCTION (SUBJECT TO THE MOTION TO REMAND)**

TO THE HONORABLE COURT:

Plaintiff I.C. Deposits Development, Inc. ("I.C. Deposits" or "Plaintiff") respectfully submits this opposition to Defendant Edward F. Valdespino's Motion to Vacate State-Court Temporary Injunction (ECF No. 11) ("Motion"), subject to the pending Motion to Remand to State Court (ECF No. 5). Defendant's Motion should be denied for the following reasons:

First, the Motion is an improper effort by a Texas defendant to escape the consequences of adverse state-court rulings through tactical federal removal. As set forth in Plaintiff's pending Motion to Remand (ECF No. 5), Valdespino's removal was itself improper under 28 U.S.C. § 1441(b)(2)'s forum defendant rule, because Valdespino—a licensed Texas attorney—extensively litigated this case in Bexar County state court, filed an answer, entered a Rule 11 Agreement in which he admitted possessing Plaintiff's $5,000,000.00, and only removed after Judge Larry Noll entered the Temporary Injunction Order requiring him to deposit the disputed funds into the court registry. This Court should remand the case; if it does so, the Motion to Vacate becomes moot.

Second, even if the Court declines remand, the state-court temporary injunction remains fully enforceable under 28 U.S.C. § 1450. Removal does not dissolve a valid state-court injunction.

Valdespino has been in open defiance of that order since May 14, 2026—the court-ordered compliance deadline that passed before he removed the case. This Court should enforce the injunction and, if necessary, hold Defendant in contempt.

Third, on the merits, Defendant's Motion mischaracterizes the legal standards governing injunctive relief and misapplies the arbitration doctrine. Plaintiff has demonstrated irreparable harm not adequately remedied by money damages alone, the arbitration agreement and AAA rules expressly permit court-ordered injunctive relief, and the cases Defendant relies upon are factually distinguishable.

**FACTUAL AND PROCEDURAL BACKGROUND**

Valdespino, a licensed Texas attorney, represented to Plaintiff in September 2025 that he would hold Plaintiff's $5,000,000.00 in his IOLTA trust account as escrow agent pending completion of an investment transaction, and return the funds if the transaction was not consummated. The transaction failed. Valdespino refused to return the funds—while repeatedly promising in writing to do so and fabricating excuse after excuse for his failure to comply.

On April 9, 2026, Plaintiff filed suit in the 438th Judicial District Court of Bexar County. The next day, Judge Tina Torres found that Plaintiff demonstrated probable, imminent, and irreparable harm and issued a Temporary Restraining Order. See ECF No. 5-1.

Rather than comply, Valdespino engaged in a pattern of procedural delay. He contacted Plaintiff's counsel and requested a reset of the TI hearing—ultimately executing a Rule 11 Agreement on April 24, 2026, in which he expressly admitted: "There is in excess of $5,000,000.00 in my IOLTA trust account, $5,000,000.00 of which was sent to me by Plaintiff I.C. Deposits Development, Inc." See ECF No. 5-2. Valdespino then appeared at two TI hearings, made "Not Ready" motions each time, and litigated the merits before Judge Noll on May 11, 2026.

After hearing extensive argument and evidence from both sides (insert exhibit—transcript from the hearing), Judge Noll issued a Temporary Injunction Order on May 11, 2026, finding: (1) Plaintiff would suffer imminent and irreparable injury; (2) Defendant possessed Plaintiff's $5,000,000.00; (3) the funds were the crux of the dispute; (4) Plaintiff would probably recover; and (5) the injunction was necessary to preserve the status quo. See ECF No. 5-6. Judge Noll ordered Valdespino to deposit the $5,000,000.00 into the registry of the Bexar County District Clerk by no later than 11:00 a.m. on May 14, 2026—a deadline proposed by Valdespino himself. Id. Both parties signed the order as agreed to as to form. Id.

Rather than comply with Judge Noll's Order, Valdespino removed the case to this Court on May 14, 2026—the very day the deposit was due. He has not deposited a single dollar. His Notice of Removal falsely represented that he had not been "properly served," despite having filed an answer, signed a Rule 11 Agreement, made multiple court appearances, litigated subpoena objections, and agreed to the form of the TI Order. See ECF No. 1; ECF Nos. 5-2 through 5-6.

## I. THIS COURT SHOULD FIRST RULE ON PLAINTIFF'S MOTION TO REMAND; IF GRANTED, THE MOTION TO VACATE IS MOOT

Plaintiff's Motion to Remand (ECF No. 5) is pending before this Court and should be decided before the Motion to Vacate. Removal was improper under the forum defendant rule because Valdespino is a Texas citizen who extensively litigated this case in state court. See 28 U.S.C. § 1441(b)(2). Valdespino's claim that he was not "properly served"—the sole basis for avoiding the forum defendant rule—is directly contradicted by his own filings, including his answer, Rule 11 Agreement, court appearances, and agreement to the TI Order. See ECF Nos. 5-2 through 5-6.

Valdespino's removal also constituted an impermissible waiver: the Fifth Circuit recognizes that a defendant who substantially invokes state court jurisdiction before removing

forfeits the right to remove. See *Brown v. Demco, Inc.*, 792 F.2d 478, 481 (5th Cir. 1986). If the Court remands—as it should—the Motion to Vacate is mooted and the state-court injunction is automatically reinstated in full force.

## II. THE TEMPORARY INJUNCTION REMAINS FULLY ENFORCEABLE UNDER 28 U.S.C. § 1450 AND SHOULD BE ENFORCED IMMEDIATELY

### A. Section 1450 Preserves the State-Court Injunction After Removal.

Regardless of whether remand is granted, the temporary injunction entered by Judge Noll remains operative under federal law. Section 1450 provides: "All injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court." 28 U.S.C. § 1450. The Supreme Court has held that § 1450 exists to preserve the effectiveness of state-court orders after removal and to prevent disruption caused by tactical removal. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 436 (1974). Removal does not automatically dissolve a valid state-court injunction. Id.; *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1303–04 (5th Cir. 1988).

Defendant cannot nullify Judge Noll's Order simply by removing the case the very morning the deposit was due. The injunction is effective unless and until this Court modifies or dissolves it. It has not been dissolved. Valdespino has therefore been in open violation of a court order since May 14, 2026.

### B. The State Court's Findings Were Fully Litigated and Are Entitled to Respect.

This is not a case where Plaintiff seeks a new injunction from scratch based on untested allegations. Judge Noll entered the Temporary Injunction Order only after: (1) Defendant received notice and multiple continuances at his own request; (2) both parties appeared and presented argument and evidence; (3) Defendant proposed the compliance deadline used in the order; and (4) both parties agreed to the form of the order. See ECF No. 5-6. The findings—imminent

irreparable harm, probable right to recovery, necessity of preserving the status quo—were made on a developed factual record that included Defendant's own signed admission that he holds Plaintiff's $5,000,000.00. See ECF No. 5-2.

**C. Immediate Enforcement Is Necessary to Prevent Dissipation.**

Valdespino's conduct since the TI Order was entered confirms the urgent need for enforcement. He removed the case on the compliance deadline rather than deposit the funds. He has made no effort to comply in the weeks since removal. The risk of dissipation is not speculative—it is demonstrated by Valdespino's pattern of repeatedly promising to return the funds while failing to do so, delaying hearings, and now using the removal mechanism to evade a court order. This Court should enforce the injunction and order immediate deposit of the $5,000,000.00 into the registry of this Court pending further proceedings.

## III. THE MOTION TO VACATE SHOULD BE DENIED BECAUSE THE TEMPORARY INJUNCTION IS NOT VOID

**A. Rule 60(b) Relief Is an Extraordinary Remedy Unavailable Here.**

Federal Rule of Civil Procedure 60(b) authorizes relief from a judgment or order only in extraordinary circumstances. An order is void only when the issuing court acted in a manner inconsistent with due process—not merely when it committed legal error. *Steverson v. GlobalSantaFe Corp.*, 508 F.3d 300, 303 (5th Cir. 2007); *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010). The state court had jurisdiction at the time of entry, Defendant had notice, Defendant appeared and was fully heard, and Defendant agreed to the form of the order. There was no abuse of discretion, therefore injunction is not void.

**B. Plaintiff Has Demonstrated Irreparable Harm Not Remedied by Money Damages Alone.**

Defendant argues that Plaintiff's claim for monetary damages defeats any showing of irreparable harm. This argument oversimplifies the law. The relevant question is not whether

Plaintiff seeks monetary relief, but whether that relief will be adequate and collectable. Where a defendant is dissipating, hiding, or refusing to account for specific identifiable funds, a future money judgment may be an empty remedy. See *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011) ("If the assets are dissipated, the plaintiff will be unable to collect a later money judgment.").

That risk is not hypothetical here. Valdespino admitted in a signed court filing that he holds Plaintiff's $5,000,000.00 in his IOLTA account. He has refused to return it despite repeated promises. He litigated the TI proceedings and then, rather than comply with the court's order, removed the case on the compliance deadline and has remained in defiance for weeks. This sequence—admission of possession, refusal to return, repeated delay, tactical removal on the day funds were due—demonstrates a concrete and immediate danger of dissipation.

*Dennis Melancon, Inc. v. City of New Orleans*, relied upon by Defendant, is inapposite. That case involved a regulatory challenge to a municipal ordinance, with no risk of asset dissipation by a defendant. *Dennis Melancon, Inc. v. City of New Orleans* 703 F.3d 262 (5th Cir. 2012). The irreparable harm analysis in that context bears no resemblance to this case, where a fiduciary has refused to return $5,000,000.00 entrusted to him and has defied a court order requiring him to deposit the funds. *Wyse v. Valdespino*, is also inapposite, and Defendant's reliance on it reveals how thin his merits argument truly is. *Wyse v. Valdespino*, No. SA-26-CA-02973-XR, 2026 WL 1401973 (W.D. Tex. May 15, 2026). *Wyse* is distinguishable on at least four independent grounds, each of which is sufficient standing alone to render that decision inapplicable here. First, and most fundamentally, the procedural posture is entirely different. In *Wyse*, different plaintiffs were *seeking* a new injunction in federal court on a fresh application—asking a federal district court to exercise its own injunctive authority in the first instance. This case presents an entirely different question: whether a fully litigated, validly entered state-court temporary injunction, preserved by

28 U.S.C. § 1450, should be enforced or vacated after tactical removal. The standard governing a motion to vacate an existing injunction under § 1450 is materially different from the standard governing an initial application for injunctive relief, and the *Wyse* court's analysis of the latter has no bearing on the former. See *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 436 (1974) (§ 1450 preserves state-court orders after removal; the removing defendant bears the burden of showing the injunction should be dissolved). Second, the evidentiary record here is far more developed and adverse to Defendant than the record that existed in *Wyse*. The injunction entered by Judge Noll was supported by Defendant's own signed Rule 11 Agreement expressly admitting that he holds Plaintiff's $5,000,000.00 in his IOLTA account, multiple court appearances at which both parties presented argument, Defendant's in-court representations that the funds exist and remain under his control, and Defendant's own agreement to the form of the order and its 72-hour compliance deadline. Whatever evidentiary showing was made—or not made—in *Wyse*, it cannot be treated as a ceiling on what this Court may consider on the distinct factual record before it. Irreparable harm findings are inherently fact-specific, and the admission of possession plus the demonstrated pattern of delay and broken promises presents a materially stronger case than any prior proceeding involving different plaintiffs on different evidence. Third, *Wyse* arose between different parties and on a different claim. The existence of other aggrieved creditors who may have sought relief on their own terms, on their own schedule, and on their own evidence does not diminish Plaintiff's independent right to the relief it obtained in state court. A ruling against one plaintiff on one evidentiary record does not collaterally estop a different plaintiff who built a more complete record in a separate proceeding. Fourth, and perhaps most telling, Defendant's use of *Wyse* is itself evidence of the very harm Plaintiff seeks to prevent. That Valdespino is now a named defendant in at least two separate federal lawsuits brought by different

clients who entrusted funds to him as escrow agent, and who allege the same pattern of delay, broken promises, and non-return of funds, corroborates rather than undermines the finding of irreparable harm here. The existence of multiple aggrieved parties pursuing the same defendant for the same conduct does not make any individual plaintiff's harm less real or less urgent—it makes the risk of dissipation more acute. If anything, the parallel proceedings confirm that Plaintiff's concern that these funds may not be available to satisfy a judgment is well-founded and not speculative.

**C. The Arbitration Agreement and AAA Rules Expressly Permit Court-Ordered Injunctive Relief**

Defendant contends that the parties' agreement to arbitrate under the AAA rules stripped the state court of authority to enter injunctive relief. This argument is directly contradicted by the very rules Defendant invokes. AAA Commercial Arbitration Rule 38(c) expressly provides that a party seeking interim injunctive relief in a court "shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate." By the explicit terms of the AAA rules, recourse to a court for injunctive relief is permissible. Defendant cannot invoke the AAA rules as both shield and sword—relying on them to seek arbitration while ignoring their express authorization of court-ordered relief.

*RX Pros, Inc. v. CVS Health Corp.*, is distinguishable. The contract at issue in *RX Pros* contained an explicit provision incorporating the AAA's emergency relief procedures as the exclusive mechanism for preliminary relief—a provision absent from the parties' agreement here. *RX Pros, Inc. v. CVS Health Corp.,* No. CV 16-0061, 2016 WL 316867 (W.D. La. Jan. 26, 2016). Moreover, *RX Pros* involved vacating a TRO entered without a hearing, not a fully-litigated temporary injunction entered after hearings at which the defendant appeared, participated, and agreed to the form of the order. The procedural posture here is materially different.

Defendant's argument, taken to its logical conclusion, would allow a party to a dispute to freely dissipate assets pending arbitration while courts stand powerless to intervene. This result is inconsistent with the purpose of arbitration and has been rejected by courts. See *Toyo Tire Holdings of Americas Inc. v. Cont'l Tire N. Am., Inc.*, 609 F.3d 975, 981 (9th Cir. 2010) ("[I]t would be perverse if the existence of an arbitration clause undermined a district court's ability to preserve the status quo prior to arbitration."); *See Performance Unlimited, Inc. v. Questar Publishers, Inc.,* 52 F.3d 1373, 1377–80 (6th Cir.1995) (reversing district court's denial of preliminary injunction and joining other circuits in holding that district courts have subject matter jurisdiction under the Federal Arbitration Act ("FAA") to grant preliminary injunctive relief pending arbitration); *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 910 F.2d 1049, 1052–54 (2d Cir.1990) (federal district court has power to issue injunction pending arbitration, even absent express contractual language so providing).

## IV. IN THE ALTERNATIVE, THE INJUNCTION SHOULD REMAIN IN EFFECT AS A STATUS QUO ORDER PENDING ARBITRATION

Should the Court grant Defendant's motion to compel arbitration (ECF No. 3), the appropriate course is not to vacate the temporary injunction but to maintain it pending the arbitrator's ruling on Plaintiff's emergency relief application. The power of a federal court to preserve the status quo during the pendency of arbitration is well established. See *Roso-Lino Bev. Distributors, Inc. v. Coca-Cola Bottling Co.*, 749 F.2d 124, 125 (2d Cir. 1984) (per curiam) (maintaining injunction pending arbitration to preserve the status quo).

Vacating the injunction before the arbitrator has had any opportunity to consider Plaintiff's emergency relief application would reward Defendant's delay and create the precise risk that injunctive relief is designed to prevent. If Defendant wishes to challenge the injunction on its merits, he may seek emergency relief before the AAA arbitrator. Until that occurs, the existing

injunction should remain in place. AAA Commercial Arbitration Rule 38(a) expressly empowers the arbitrator to "take whatever interim measures he or she deems necessary, including injunctive relief." Plaintiff is prepared to seek such relief in arbitration if and when this Court so directs—but the status quo must be preserved in the meantime.

## V. DEFENDANT'S OWN CONDUCT COMPEL ENFORCEMENT: A PARTY CANNOT UNILATERALLY CHOOSE TO IGNORE A COURT ORDER

Perhaps the most fundamental defect in Defendant's position is the one he never addresses: no litigant has the unilateral right to decide that a court order does not apply to him. Courts have long held that a party subject to an injunction must comply with it—even if he believes it to be erroneous—and must instead seek relief through the proper channels: a motion to dissolve, a motion to modify, or an appeal. "Persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order." *GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*, 445 U.S. 375, 386-387 (1980); see also *United States v. United Mine Workers*, 330 U.S. 258, 293 (1947) (a court order must be obeyed regardless of whether it is ultimately determined to be erroneous). The rule is not a technicality; it is the bedrock upon which the authority of the courts rests. To permit a litigant to simply remove a case on the morning a deposit is due, and then do nothing, would render every court order advisory rather than mandatory.

Critically, the record establishes that Defendant *welcomed* the very order he now seeks to escape. At the May 11, 2026 hearing, when Judge Noll proposed ordering the $5,000,000.00 into the registry of the court, Valdespino told the Court: "This order will actually be helpful to me. Because like I said, I'm stuck in the middle between parties." Reporter's Record ("RR") at 13:24-25; 14:1; Exhibit 1. He confirmed he could have the funds in the registry within 72 hours: "Yes, Your Honor. I can get it done within 72 hours, and I will do that." RR 14:13-14; Exhibit 1. He

agreed to the specific deadline: "Yes, Your Honor." RR 28:21; Exhibit 1. He signed the order as agreed to as to form. Defendant is not a passive victim of an order he opposed—he endorsed it, proposed its deadline, and agreed to its form. He cannot now claim that the same order he called "helpful" constitutes a ground for vacatur.

Defendant was also not prejudiced by the order. Depositing $5,000,000.00 into the registry of the court does not extinguish any of his rights. The funds would have been held by the District Clerk pending resolution of the merits—a neutral, court-supervised custodian standing in place of Valdespino's own IOLTA account. If Defendant had truly held the funds as an innocent stakeholder, as he repeatedly claimed, placing them in the registry was the most natural and protective step available to him. Indeed, the court's order would have shielded him from exactly the competing-party pressure he described as his reason for delay. Defendant suffered no prejudice from a deposit he could later contest on the merits; he simply chose not to make it.

That choice reveals his true strategy. Had Defendant wished to contest the merits of the injunction, Texas Rule of Civil Procedure 680 and its federal counterpart provided him an immediate avenue: he could have deposited the funds into the registry, preserved the dispute on the merits, and then filed a motion to dissolve the injunction. He has done none of these things. He has not moved to dissolve. He has not sought a stay pending review. He has not deposited a dollar. Instead, he has done what he has done throughout this entire matter: stall, delay, and move the goalposts. Valdespino promised Plaintiff's counsel by email and verbally on multiple occasions that he would wire the funds "tomorrow," only to go silent and resurface with a new excuse. RR 11:8–15; Exhibit 1. He promised Judge Gonzalez on May 1, 2026, that retained counsel would be ready on May 11. RR 6:16–22; Exhibit 1. He then appeared on May 11 still unrepresented and sought yet another continuance. RR 7:5–10; Exhibit 1. He agreed to deposit the funds within 72

hours. RR 14:13–14; Exhibit 1. He did not. He instead removed the case on the compliance deadline and has remained in defiance for weeks. The Court should reject Defendant's continuing pattern of delay and enforce the order he agreed to.

## VI. PLAINTIFF INCORPORATES ITS MOTION TO ENFORCE AND REQUESTS THAT DEFENDANT BE HELD IN CONTEMPT

As set forth in Plaintiff's Motion to Remand and, in the Alternative, Motion to Enforce Existing Temporary Injunction (ECF No. 5), Defendant has been in open defiance of Judge Noll's Order since May 14, 2026. He has not deposited a single dollar into any court registry. Under 28 U.S.C. § 1450, the injunction remains in full force unless dissolved by this Court. This Court has not dissolved it. Defendant's continued refusal to comply is therefore an ongoing violation of a court order.

Plaintiff respectfully requests that, in addition to denying the Motion to Vacate, this Court enforce the existing Temporary Injunction Order and order Defendant to immediately deposit $5,000,000.00 into the registry of this Court. If Defendant continues to refuse, Plaintiff requests that the Court order Defendant to show cause why he should not be held in contempt of court.

## PRAYER

FOR THESE REASONS, Plaintiff I.C. Deposits Development, Inc. respectfully requests that this Court:

1. Deny Defendant's Motion to Vacate State-Court Temporary Injunction in its entirety;
2. Grant Plaintiff's Motion to Remand (ECF No. 5) and remand this case to the 438th Judicial District Court of Bexar County, Texas;
3. In the alternative, enforce the existing Temporary Injunction Order pursuant to 28 U.S.C. § 1450 and order Defendant to immediately deposit $5,000,000.00 into the registry of this Court;
4. Order Defendant to show cause why he should not be held in contempt for his failure to comply with the Temporary Injunction Order;

5. In the further alternative, if arbitration is compelled, maintain the temporary injunction as a status quo order pending the arbitrator's ruling on emergency relief; and

6. Grant Plaintiff all other relief to which it may be entitled at law or in equity.

Respectfully submitted,

**CUBETA LAW GROUP, PLLC**

By: */s/ Kelli Cubeta*
Kelli P. Cubeta
Texas State Bar No. 24040746
Email: Kelli.Cubeta@cubetalaw.com
322 Martinez Street
San Antonio, Texas 78205
Telephone: (210) 934-4500

AND

**DROUGHT, DROUGHT & BOBBITT, L.L.P.**

By: */s/ Matthew J. Badders*
Matthew J. Badders
State Bar No. 24069325
mjb@ddb-law.com
Laura H. Gonzalez
State Bar No. 24127264
lhg@ddb-law.com
2632 Broadway St., Suite 401-S
San Antonio, Texas 78215
(210) 225-4031 Telephone
(210) 222-0586 Telecopier

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served on all counsel of record via the Court's CM/ECF system on June 5, 2026.

*/s/ Kelli Cubeta*
Kelli Cubeta